ELIZABETH BOND ET AL. v. TEXAS AND PACIFIC RAILWAY CO. ET AL.

Delivered January 9, 1897.

**1.   Charge of Court—Issue as to Amount of Land Embraced in Deed.**

Where a deed purports to convey the land in controversy, describing it by calls for distance and also for corners of surrounding tracts, and a witness has testified that according to a survey made by himself the deed does not embrace all the tracts in controversy, it was proper for the charge of court to submit that issue to the jury.

**2.   Title by Dedication—Alley.**

Where the owner of land lays it off into lots and blocks, with streets and alleys, and sells the lots and blocks to different parties, and with reference to such streets and alleys, he cannot afterwards reclaim the land covered by such an alley by claim of title thereto, although the public may have ceased to use the alley for travel, and the owners of abutting lots may have closed it up.

**3.   Same—Deed—Conveyance to Center of Alley.**

A deed conveying a platted town or city lot bounded by a street or alley passes the fee to the center of such street or alley, as against the grantor and his assigns. Following Mitchell v. Bass, 26 Texas, 380.

4. **Trespass to Try Title—Issue of Improvements and Value Immaterial, When.**

Where, in trespass to try title, the jury have properly found in favor of defendant upon the issue of title, errors in the charge upon the issue of improvements by the defendant and value of the land are immaterial.

APPEAL from Grayson.   Tried below before Hon. DON A. BLISS.

*C. B. Randall* and *J. W. Finley*, for appellants.—1.   The court erred in the third paragraph in charging that the burden was on plaintiffs to show that the deed from Beatty to Bond included the land in controversy, or some part thereof, as the undisputed testimony showed that it did include it and the court should have so charged.   Austin v. Talk, 20 Texas, 167; Hampton v. Dean, 4 Texas, 460; McGreal v. Wilson, 9 Texas, 426; Lee v. Hamilton, 12 Texas, 413; Earl v. Thomas, 14 Texas, 583; Patton v. Rucker, 29 Texas, 402; Andrews v. Smithwick, 20 Texas, 111; Cook v. Dennis, 61 Texas, 246; Railway v. Wisenor, 66 Texas, 675; Harvey v. Cummins, 68 Texas, 606; Railway v. Gilmore, 62 Texas, 391; Railway v. Faber, 63 Texas, 344.

2.   The undisputed testimony shows that if the land was ever used as an alley or passway, such use had been abandoned, and the strip had reverted to plaintiffs as original owners.   Ramthun v. Halfman, 58 Texas, 551; Oswald v. Grenet, 22 Texas, 94; Lutcher v. Dyson, 30 S. W. Rep., 61; 2 Dill on Mun. Corp., sec. 499; Field v. Mark, 28 S. W. Rep., 1004; Monaghan v. Memphis, 31 S. W. Rep., 497; Gilder v. City of Brenham, 67 Texas, 345; Albert v. Railway, 2 Texas Civ. App., 664; Railway v. Montgomery, 85 Texas, 64; Worthington v. Wade, 82 Texas, 26; Parfsa v. City of Dallas, 83 Texas, 257; Wolf v. Brass, 72 Texas, 133; Hamilton County v. Garrett, 62 Texas, 609; Oswald v. Grenet, 15 Texas, 123; Cunningham v. San Saba County, 1 Texas Crim. App., 483; Railway v. Wilson, 83 Texas, 156; Elliott on Roads and Streets, 671; 3 Kent 448 (sub. 9), 432 note (d), 434, 451; 4 Kent, 354; Holdane v. Trustees, 21 N. Y., 474.

*Beaty & Culver*, for appellees—Geo. W. Bond laid off an addition to Sherman in lots and blocks, with streets and alleys, and intended the land in controversy as an alley, and sold lots abutting thereon with reference thereto, and though it was afterwards abandoned by the public, it did not revert to Bond, because his conveyances of the abutting lots carried title to the alley, subject to the public's easement.   Mitchell v. Bass, 26 Texas, 380, and 33 Texas, 265; Day v. Chambers, 52 Texas, 192; Ripptoe v. Law, 1 Posey's Unreported Cases, 483; Lamar County v. Clements, 49 Texas, 347; Elliott on Roads and Streets, 670, 671, 134-139; 2 Smith's Lead. Cas. (8 Am. ed.), 177-180; Atchison v. Patch, 28 Kan., 470.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellants to recover a strip of land in Sherman, Texas, 25x960 feet.   There were

a number of defendants, and before trial, the suit was dismissed as to defendants Turner and the railway company. Upon motion for new trial there was a severance as to defendants Jouvenat, Bitting and Stinnett, and the case on appeal is to be considered with reference to appellees G. M. Etter, J. F. Evans, I. P. Gunby, W. W. Wilkins, A. C. Buck and M. T. Brown.

The defendants below, each separately, plead the general issue, limitation, improvements in good faith, and each set out his field notes and disclaimed as to any other part of the land sued for. The cause was tried February 26, 1895, and there was a verdict and judgment in favor of appellees.

From the facts proved and the verdict and judgment thereon, we conclude,—that Wm. C. Beaty was the common source of title, and that about April 15, 1854, he sold and conveyed to Geo. W. Bond nineteen and one-half acres of land, and the latter sold and conveyed the same land to his wife; that after his purchase, Bond caused the land to be laid off into lots, blocks, streets and alleys, as an addition to the town of Sherman; that all the lots adjacent to the strip in controversy were subsequently sold off by Bond and wife with reference to said strip as an alley, and appellees became the owners of the respective lots abutting on the strip in controversy; that in laying off such property as an addition, and in selling off lots with reference to the strip as an alley, said Bond dedicated the strip in controversy as an alley, and appellees and their several vendors in their several purchases obtained vested rights in the same, as owners of the lots abutting thereon.

The following is a correct plat showing the strip in controversy and the lots abutting on the same:

(See page following for plat)

CROCKETT STREET. / NORTH TRAVIS STREET. / WALNUT STREET.

25x960 feet.

2 Dr. J. A. Bitting.
3 Joel 4 Stinnett.
6 Mrs. M. M. 5 Jouvenat.

Controversy

2 J. F. 1 Evans.
3 I. P. 4 Gunby.
6 G. M. 5 Etter.
7 8

Strip in

2 1
3 M. T. 4 Brown.
6 5
7 8

120 ft. 120 ft. 150 ft. 150 ft.

Appellees each proved title to the lots designated by their names between the strip in controversy and Travis street, and also to that space immediately opposite the same between the strip in controversy and Crockett street. Their enclosures extend from Travis to Crockett street, crossing the strip in question as shown by the dotted lines.

That portion of the strip in controversy claimed by appellees Evans, Gunby (Byers) and Etter was used continuously as an alley or passway from 1853 until twenty or thirty years later, when it was abandoned by the public and enclosed by abutting property owners. The general reputation and understanding in the neighborhood as far back as 1867 or 1868 was that it was a public alley.

1. The first point presented by appellants is under their second, third and fourth assignments of error, attacking that part of the court's charge, in which the jury are told that the deed from Beaty to Bond,

and from Bond to his wife, conveyed all the land described in such deeds, and left it for the jury to determine as a fact, whether or not those deeds embraced the land in controversy. The deed from Beaty to Bond described the land as lot No. 18 of J. B. Shannon's estate, containing 19½ acres (covering land in controversy); "beginning at the S. E. corner of lot 6, 8½ acres of land; thence N. 16 W. 299 varas to the S. W. corner of lot 4; thence S. 74 E., through prairie 333 varas, the S. corner of lot No. 17; thence S. 74 W. 26 varas to N. E. corner of lot No. 7; thence N. 74 E. 168 varas to the beginning."

The deed from Bond to his wife was a general conveyance of "all and singular, any and every lot, tract or parcel of land that I have and own in the city of Sherman and in the county of Grayson."

There was some controversy as to whether the deed from Beaty to Bond embraced all the strip in controversy. According to the survey of witness Sam Bonham, it would only embrace about thirteen feet of the strip in controversy. Under the descriptions contained in the deeds and testimony, the court did not err in submitting the question to the jury.

2. Under the fifth assignment of error appellants complain of the following charge of the court: "4. But even if you do believe from the evidence that said description in said Beaty deed does include the land in controversy or some portion thereof, still, if you believe further from the evidence that Geo. W. Bond, after he acquired the land described in said deed from Beaty, had the same surveyed off into blocks and lots with streets and alleys, and proceeded to sell said lots and blocks with reference to such streets and alleys, and further believe from the evidence that the land in controversy in this suit was left by said Bond as an alley or passway to the lots fronting west on said strip with reference to said strip as an alley or passway thereto, you will find for all of the defendants."

This question embraces what we believe to be the leading point in the case. There was ample testimony to show that Bond's addition to Sherman fronted west on an alley twenty-five feet in width, and that all the lots along that line abutted on that alley. That the place was used for a great number of years as a public highway, some of the witnesses testifying to such use as far back as 1853. That Bond's addition was sold off with reference to such alley, and called for lots and blocks by number.

Can a landowner, after laying off his property as a city or town addition, and selling his lots with reference to streets and alleys as laid down on such addition, and after purchasers have obtained vested rights in the same, set up individual ownership in such streets and alleys and recover the same as his private property?

This suit is not brought by plaintiffs as a part of and on behalf of the public for the purpose of opening the alley as a public highway, and there is no such question involved. It is a suit by plaintiffs to recover the alley as their private property. It has been maintained by high

authority that, "Unless the deed manifests an intention on the part of the grantor to limit the boundary line, the line, when the land is bounded by a non-navigable stream or highway, extends to the center of such stream or highway, if the grantor is the owner of the fee. * * * And where land is laid out into blocks and lots, which are bounded by what are represented on an unrecorded or defective plat as streets, a deed referring to the plat for a true description of the premises passes to the grantee, as against the grantor and his assigns, the fee to the center of the street upon which the lot conveyed abuts." '2 Devlin on Deeds, sec. 1024, note, and authorities there cited.

In the case of Mitchell v. Bass, 26 Texas, 380, Judge Wheeler said: "The established doctrine of common law is, that a conveyance of land bounded by a public highway carries with it the fee to the center of the road, as part and parcel of the grant. * * * The owners of the land on each side go to the center of the road, and they have the exclusive right to the soil subject to the right of passage in the public." See also, Chambers v. Day, 62 Texas, 192.

In this case, the plaintiffs' recovery is defeated, unless they have shown a right to the property in themselves. It is perfectly clear under our decisions, that appellees have shown a vested right in the property as appurtenant to their lots, and appellants have no right to recover it in this action.

In the well considered case of Lamar County v. Clements, 49 Texas, 354, 355, Judge Moore said: "It has been repeatedly held by this court, as well as by many others, that where the owner of land lays out and establishes a town, and makes and exhibits a map or plan of the town, with streets and public squares, and sells the lots with reference to such plan, the purchasers acquire, as appurtenant to their lots, all such rights, privileges, easements, and servitudes · represented by such map or plan to belong to them, or to their owners; that the sale and conveyance of lots according to such map implies a grant or covenant, for the benefit of the owners of the lots, that the streets and other public places represented by the map shall never be appropriated by the owner to a use inconsistent with that represented by the map, on faith of which the lots are sold, and especially so where the use to which the owner proposes converting them tends to lessen the value of the lots thus sold." Oswald v. Grenet, 22 Texas, 94; Preston v. City of Navasota, 34 Texas, 684; Huber v. Gazley, 18 Ohio, 18; City of Logansport v. Dunn., 8 Ind., 378; Beatty v. Kurts, 2 Pet., 566; Rowan v. Portland, 8 B. Monr., 232. See also Gilder v. Brenham, 67 Texas, 349; Corsicana v. White, 57 Texas, 382. The objections of appellants to the above charge are not sustained.

3. Under the sixth assignment of error appellants complain that the court erred in the submission of the question of limitation. No special instruction was asked on that subject by appellants, and the charge of the court, taken as a whole, fairly submitted that issue.

4. Under the seventh and eighth assignments of error it is claimed

that the court erred in its charge in submitting the questions of improvements in good faith and the value of the land. Both of these assignments are immaterial, as the jury found no value of improvements and no value of the land.

The remaining assignments of error presented, up to and including the twenty-third, involve questions of the exclusion and admission of testimony, and the refusal to grant a new trial.

We have carefully examined each assignment, and find no reversible error.

The judgment is affirmed.                          *Affirmed.*

Writ of error refused.